## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUKE A. MEKETA, | : | No. 1:12-cv-00364 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| ERIC KAMOIE, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

### June 28, 2013

Presently pending before the Court is the motion for summary judgment (doc. 25) of Defendant Eric Kamoie. The motion has been fully briefed (docs. 27, 32, 34) and is therefore ripe for our review. For the reasons that follow, we will grant the motion in its entirety and enter judgment in favor of the Defendant.

## I.   PROCEDURAL HISTORY

The Plaintiff, Luke A. Meketa ("Meketa" or "Plaintiff") commenced this action with the filing of a complaint (doc. 1) on February 27, 2012, wherein he asserted claims for malicious prosecution (Count I), false arrest (Count II), false imprisonment (Count III), and violation of procedural due process guarantees (Count IV) against Defendant police officer Eric Kamoie ("Officer Kamoie" or "Defendant"). On March 23, 2012, the Plaintiff filed an amended complaint (doc.

6) which contained stylistic revisions but left all material portions of the original pleading unaltered. In his pleading, the Plaintiff alleges that Officer Kamoie filed an affidavit of probable cause with a magisterial district judge on March 2, 2010, resulting in his arrest, and that Officer Kamoie withheld material exculpatory information from and included materially false information in that document.

The Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. 7) on April 2, 2012. On June 13, 2012, after that motion was fully briefed, the Court issued an order which denied the motion in its entirety and concluded that, accepting all facts as true and drawing all inferences therefrom in favor of the Plaintiff, the amended complaint stated plausible claims for relief. The Defendant filed an answer and affirmative defenses (doc. 18) on June 20, 2012, after which the parties engaged in a period of discovery.

On April 1, 2013, the Defendant filed the instantly pending motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (doc. 25) contemporaneously with a supporting brief (doc. 26) and statement of undisputed facts (doc. 27). On May 17, 2013, the Plaintiff filed a brief in opposition to the Defendant's motion (doc. 32) and a document styled as an "answer to statement of facts" (doc. 33). A review of that document reveals that it contains only eleven (11) new assertions of fact and neither affirms or denies the averments contained in the

Defendant's statement of undisputed facts. (*Id.*). On May 29, 2013, the Defendant filed a reply brief (doc. 34) and responsive statement of facts (doc. 35). The motion is now fully briefed and is ripe for review and disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2).  An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must . . . set out

specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw therefrom. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III.   STATEMENT OF MATERIAL FACTS

In accordance with the standard of review applicable to motions for summary judgment, the following facts are derived from the record and viewed in a light most favorable to the non-moving party.[1]

### A.   The Defendant's Undisputed Statement of Material Facts

The record reveals that Plaintiff and his long-time girlfriend, Janet L. Poper ("Poper"), ended their relationship on February 5, 2010. (Doc. 27, ¶ 4). After their breakup, the two continued to live together, but had frequent disagreements about the distribution of the property they had jointly acquired during their relationship. (*Id.* ¶ 5). At least one such disagreement required police to be dispatched, however neither party was charged as a result of that incident. (*Id.* ¶ 6).

On February 21, 2010, Poper went to the Greencastle Police Department and reported that Meketa had attempted to rape her at approximately 2:00 a.m. on February 15, 2010 and that he later returned to the residence and did rape her at

---

[1] As we have noted above, in support of his motion, the Defendant has filed a 119-paragraph statement of material undisputed facts (doc. 27) which contains detailed citation to the record in support of each averment. In response, the Plaintiff has filed an eleven (11) paragraph "supplemental statement of undisputed material facts" which, rather than controverting the detailed factual exposition provided by the Defendant, asserts new "facts" in support of his opposition. Local Rule of Court 56.1 provides expressly that "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Local Rule 56.1. Accordingly, as a result of the Plaintiff's blatant failure to oppose, controvert, or otherwise respond to the Defendant's detailed statement of facts, to the extent the facts in the Defendant's statement are supported by record evidence, the Court will deem them to be admitted.

approximately 4:50 p.m. that same day. (Doc. 27, ¶ 7). Defendant Officer Eric Kamoie ("Officer Kamoie" or "Defendant") spoke with Poper initiated an investigation. (*Id.* ¶ 8). After conducting his investigation and consulting with Franklin County Assistant District Attorney Lauren Sulcove ("ADA Sulcove"), Officer Kamoie filed an affidavit of probable cause ("the Affidavit") with a magisterial district judge on March 2, 2010. A warrant issued, and Meketa was arrested and charged with multiple crimes, including rape. It is the Plaintiff's position that the Defendant intentionally withheld material exculpatory information from and included materially false information in this Affidavit. As such, our review of the facts primarily concerns what information was available to Officer Kamoie when he drafted that document.

Officer Kamoie testified that at the time of her initial report to him, Poper was bruised, visibly upset, and crying. (*Id.* ¶ 67). After taking Poper's statement, Officer Kamoie took her to the Chambersburg Hospital, where a limited rape kit was completed. (*Id.* ¶ 24). A full rape kit could not be completed because the "'assault occurred over time limit for full kit.'" (*Id.* ¶ 94). The sexual assault kit with photographs taken by hospital personnel was provided to Officer Kamoie on February 21, 2010. (*Id.* ¶ 93). Poper told hospital personnel that she had been carried into a middle bedroom by the Plaintiff on the afternoon of February 15,

2010, that she had broken blinds in an attempt to escape, that he had instructed her to get undressed, and that he had informed her that he could not be charged with rape because he had worn a condom. (*Id.* ¶ 95). The hospital report lists Poper's medications as Neurotonin, Digoxin, Effexor, and Klonopin. (Doc. 27-13, p. 5).

In her formal statement made several days after her initial report to Officer Kamoie, Poper noted that she had taken NyQuil on the night of the assault; Officer Kamoie did not know if she had taken her other prescribed medications. (Doc. 27, ¶ 69). Poper also told Officer Kamoie that she had broken the window blinds in her apartment trying to escape out of the window, and he later observed and took a photograph which showed the damage to the blinds. (*Id.* ¶¶ 70-71). Officer Kamoie then spoke to Poper's brother, Joshua, whose statement Kamoie considered to be a "shorter version" of what Poper had told him that corroborated her account. (*Id.* ¶¶ 72-73). Based on the hospital report, his observations of the victim and apartment, and the statements of Poper and her brother, Officer Kamoie filed his Affidavit of Probable Cause. At the time that he drafted the Affidavit, Officer Kamoie believed that he had "overwhelming" evidence to show that a crime was committed and that the Plaintiff was the person who had committed it. (*Id.* ¶ 74). He did not believe that revenge was a motive in Poper reporting the rape. (*Id.* ¶ 79). Officer Kamoie found Poper to be credible and had no information to believe that she was not.

(*Id.* ¶ 66).

Given its relevance to the case *sub judice*, we quote the contents of the

Affidavit, filed on March 2, 2010 by Officer Kamoie, in their entirety here:

> Your Affiant, Officer Eric Kamoie, of the Greencastle
> Police Department, believe the following to be
> reasonable and sufficient probable cause to charge the
> DEFENDANT, LUKE ANTHONY MEKETA, with the
> following crimes: one (1) count of violation of PACC
> Title 18 section 3121(a)(1), Rape, a Felony of the first
> degree. One (1) count of violation of PACC Title 18
> section 3123(a)(1), Involuntary Deviate Sexual
> Intercourse, a Felony of the first degree. One (1) count of
> violation of PACC Title 18 section 3125(a)(1),
> Aggravated Indecent Assault, a Felony of the second
> degree. One (1) count of violation of PACC Title 18
> section 3126(a)(1), Indecent Assault, a Misdemeanor of
> the second degree and one (1) count of violation of
> PACC Title 18 section 2701(a)(3), Simple Assault, a
> Misdemeanor of the second degree.
>
> On 02/21/2010, at 1817 hours, your Affiant took a walk
> in report of rape at the Greencastle Police Department. I
> met with the VICTIM, JANET LYNN POPER, in the
> lobby of the police department. Poper stated that her ex-
> boyfriend, Luke Anthony Meketa, had attempted to rape
> her on 02/14/2010, but was interrupted by Poper's
> brother, Joshua. Poper stated that Meketa did rape her on
> 02/15/2010. Reportedly, these acts took place at the
> apartment that Poper and Meketa shared at 154 North
> Allison Street Apartment B, in the borough of
> Greencastle. Poper stated that Meketa has been raping
> her on and off since the beginning of their relationship in
> August of 2007. I sent Poper to the Chambersburg
> Hospital to have the photograph and documentation
> portion of a rape kit performed. I spoke with Poper at the

hospital after her examination and she agreed to come to the Greencastle Police Department on 02/24/2010 to give a statement. I collected the documentation from the hospital and secured it in the department evidence locker.

On 02/24/2010, Poper provided a twelve (12) page written statement and a recorded oral interview. Poper stated that on 02/14/2010, she went to sleep after taking NyQuil for a cold and woke up naked sometime during the middle of the night because she felt Meketa's penis between her legs. Poper stated she screamed for Meketa to get off of her and he placed his hand over her mouth and nose to the extent that she could not breathe. Poper stated that Meketa got on top of her and placed his penis in her anus. Poper stated that she was able to get Meketa off of her and she continued to scream for her brother, Joshua, who was staying at the apartment. Poper stated that Meketa placed his hand on her vagina and started rubbing it. Poper stated that Joshua came to the room and opened the door and Meketa stopped his actions and let her go.

Poper stated that on 02/15/2010, at approximately 4:20 p.m., she was sitting on a recliner in the living room of the apartment and Meketa approached her and grabbed her cell phone out of a pocket in her robe and grabbed her and carried her to a bedroom. Poper stated that she tried to use her arms and legs to stop Meketa as he was carrying her to the room. Poper stated that she tried to hide behind a clothes rack and he grabbed her and shoved her to the floor. Poper stated that she was able to get up and ran to the window to try and escape and Meketa picked her up and put her on the floor again. Poper stated that Meketa made her remove all of her clothing and blocked the door so that she could not leave and removed all of his clothing. Poper stated Meketa came over to her and licked her vagina and then held her down and placed his hand over her nose and mouth to the extent that she

could not breathe, because she was screaming for help. Poper stated that she thought she was going to die. Poper stated that she repeatedly begged Meketa to stop. Poper stated that Meketa placed a condom on his penis and started having vaginal intercourse with her.

(Doc. 27-16, p. 1). Officer Kamoie testified that ADA Sulcove approved the Affidavit and the charges against the Plaintiff and actually told him which charges to file. (*Id.* ¶ 64).

A magisterial district judge then reviewed the Affidavit and issued a warrant for Plaintiff's arrest on a finding of probable cause. Officer Kamoie and Chief Phillippy arrived at the Plaintiff's home and asked him to accompany them to the police station to discuss a confidential matter. (Doc. 27, ¶ 40). At their police headquarters, Officer Kamoie and Chief Phillippy placed the Plaintiff in a holding cell and Officer Kamoie asked him whether he had ever raped Poper and where he was on the dates of the alleged rape and attempted rape. (*Id.* ¶¶ 41-42). Plaintiff offered no alibi and told Officer Kamoie that he did not know where he was on the specified dates. (*Id.* ¶ 43). Bail was set at $50,000, and the Plaintiff was in jail for approximately eight (8) hours before bail was posted. (*Id.* ¶ 46). A trial followed, and a jury ultimately acquitted the Plaintiff of all charges.

**B.     The Plaintiff's "Supplemental" Statement of Material Facts**

As we have noted, the Plaintiff has not responded to, controverted, or even

acknowledged the Defendant's statement of undisputed material facts, which is roundly supported by the record evidence, but has instead filed an eleven (11) paragraph, self-styled "supplemental" statement of facts. The Plaintiff notes first Officer Kamoie's testimony that a lack of physical evidence could indicate that an alleged victim is lying. (Doc. 33, ¶ 1). However, because Plaintiff did not dispute that Poper presented to Officer Kamoie with bruising, we question the relevance of this suggested fact. Plaintiff also asserts that Officer Kamoie did not interview him before filing the Affidavit, (*id.* ¶ 2), that Officer Kamoie did not include in his Affidavit that Poper was prescribed to "mind-altering" prescription drugs (*id.* ¶ 4), that Officer Kamoie did not include in the Affidavit that Poper had previously withdrawn a report of rape with the Pennsylvania State Police for fear of a false reports charge and that Officer Kamoie did not follow up with that officer (*id.* ¶¶ 5-6), that Officer Kamoie did not include in the Affidavit that the Plaintiff and Poper had recently ended their romantic relationship (*id.* ¶ 7), that Officer Kamoie did not solicit Plaintiff's side of the story until after charges were filed (*id.* ¶ 8), that Officer Kamoie deliberately omitted material and exculpatory facts and did not believe he had to provide that information in the Affidavit (*id.* ¶¶ 9-10), and that Officer Kamoie omitted that Poper had previously been convicted of a crime of

dishonesty (*id.* ¶ 11).[2]

Officer Kamoie admits that he did not investigate the prior rape allegation or include it in his Affidavit, but qualifies that this was because that earlier crime was not relevant to establishing probable cause for the crime he was investigating. (Doc. 35, ¶¶ 5-6). The record does establish that Office Kamoie might have been aware of but did not include Poper's full list of prescription medications in his Affidavit, however Officer Kamoie explained that this was because the hospital report included all medications which Poper is prescribed to, not those which she took on the occasion in question, and that he did not perceive that Poper was having any difficulty with perception or recollection. (*Id.* ¶ 4).

Regarding the remainder of Plaintiff's factual statement, Officer Kamoie denies the Plaintiff's conclusory allegations that he intentionally provided only that information which supported a finding of probable cause while omitting any information that was exculpatory or otherwise suggestive of innocence. (*Id.* ¶¶ 7, 9, 10, 11). We note that while the Plaintiff cites to Officer Kamoie's deposition testimony for support, the cited testimony does not remotely lend support to the proposition that Officer Kamoie intentionally skewed the Affidavit in order to

---

[2] The Plaintiff makes no further reference to this final purported omission anywhere in his opposition papers and does not include it in his proposed reconstructed affidavit. To that end, because it appears that the Plaintiff has abandoned any argument related to this point, we do not consider this factual averment in our analysis.

compel a certain result. (*See* Ex. A, p. 53 (Plaintiff testifying that "I provide the information I have at the time. I provide the information that leads me to believe a crime was committed. This is the person that did it, these are the facts behind the circumstances...I believe in an Affidavit of Probable Cause you present the facts as they are stated to you, the information again you have at the time. . . )). The Plaintiff's characterization of this testimony goes well beyond a fair inference and is, indeed, manifestly disingenuous. To that extent, we will reject these purported "facts" and do not consider them in our analysis.

## IV.    DISCUSSION

In his amended complaint, the Plaintiff has asserted claims against Officer Kamoie for various violations of the Fourth Amendment to the United States Constitution, to include claims for false arrest, false imprisonment, malicious prosecution, and procedural due process violations. Given the varying standards applicable to each category of claims, we will address them *seriatim* after a brief discussion of the doctrine of qualified immunity, which the Defendant raises as a defense to each claim against him.

### A.    Qualified Immunity

The doctrine of qualified immunity shields officials acting and sued in their individual capacities, see *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985). A state or

municipal actor "sued in his individual capacity enjoys qualified immunity if his conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) (*superseded on other grounds in* P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d. Cir. 2009)). The Third Circuit has succinctly set forth the standard for analyzing a qualified immunity claim:

> Determining whether a state actor is entitled to the affirmative defense of qualified immunity generally involves two inquiries: (1) do the facts alleged show that a state actor violated a constitutional right, and (2) was the constitutional right clearly established so that a reasonable person would know that the conduct was unlawful? A right is clearly established if there is "sufficient precedent at the time of the action . . . to put [the] defendant on notice that his or her conduct is constitutionally prohibited. Courts are accorded 'discretion in deciding which of the two prongs of the qualified immunity analysis should be address first in light of the circumstances in the particular case at hand."

*Wilson v. Zielke*, 382 Fed. Appx. 151, 152 (3d. Cir. Feb. 9, 2010) (*quoting Pearson v. Callahan*, 555 U.S. 223 (2009); *McKee v. Hart*, 436 F.3d 165, 171 (3d Cir. 2006)) (internal citations omitted). The Third Circuit has admonished that in considering claims of qualified immunity, courts are to be "sensitive to 'the broad range of reasonable professional judgment accorded' law enforcement officials in the § 1983 context." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000).

We thus begin our analysis, as we are encouraged to do, by determining whether the record contains sufficient evidence to support a finding that Officer Kamoie violated the Plaintiff's constitutional rights, beginning with the Plaintiff's false arrest and false imprisonment claims.

### B.    False Arrest and False Imprisonment[3]

For the Plaintiff to prevail on either or both of these Fourth Amendment claims, it is requisite that he demonstrate a lack of probable cause for his arrest and his subsequent criminal prosecution. It is the Plaintiff's contention that Officer Kamoie knowingly, deliberately, or with reckless disregard for the truth omitted material information from his Affidavit the inclusion of which would necessarily have precluded a judicial finding of probable cause. (Doc. 1, ¶¶ 40-54). It is the Defendant's position that the information referred to by the Plaintiff was neither required to be included in the Affidavit nor was its omission material to a finding of probable cause.

The Warrant Clause of the Fourth Amendment states that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." U.S. CONST. Amend. IV. Issuance of an arrest warrant by a judge, however, does not in and of

---

[3] Because the Plaintiff's false arrest and false imprisonment claims have the same basis and identical elements, we address them *pari passu*.

itself insulate an officer from liability for false arrest or imprisonment. *See Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). A plaintiff can prevail on a false arrest or false imprisonment notwithstanding judicial issuance of an arrest warrant if he or she can establish: (1) "that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" and (2) "that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Id.* at 786-87 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). The Third Circuit has recognized the fluidity of the concept of "reckless disregard" in this particular Fourth Amendment context and has thus articulated divergent standards for measuring omissions and assertions, each of which is applicable in this matter.

The Third Circuit has explained that material omissions are made with reckless disregard for the truth if the affiant "withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Id.* at 787 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). On the other hand, an assertion is made with reckless disregard when, given all of the evidence, "the affiant must have entertained some serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* at 788 (quoting *United States v.*

*Clapp*, 46 F.3d 795, 800 (8th Cir. 1995)). Once we determine whether an omission or assertion was made with reckless disregard for the truth, the plaintiff must proceed to the second prong of this two-step paradigm, which tasks him to prove that inclusion or exclusion, respectively, of the information recklessly disregarded would have negated a finding of probable cause. *Id.* at 786-87.

In his amended complaint and again in his papers opposing summary judgment, the Plaintiff asserts that Officer Kamoie both included false assertions and omitted material information in his Affidavit which would have precluded the magisterial district judge's probable cause determination. Given the distinct standards governing each type of claim, we will address each contention in turn.

### 1. Assertions

We turn first to the Plaintiff's contention that Officer Kamoie, in the Affidavit, "falsely implied that on February 14, 2010, the date of the allege [sic] attempted rape, Poper had taken only the medication Nyquil, when he knew from the Chambersburg Hospital report that Poper was taking multiple medications for her various mental and physical problems." (Doc. 32, p. 6). In his opposition brief, the Plaintiff asserts that the inclusion of this false statement led the magisterial district judge to believe that the Plaintiff had taken and was prescribed to no other medication on the date in question. He contends that had this false assertion not

been included in the Affidavit, the magisterial district judge would not have been able to find probable cause to arrest him.

Fatal to the Plaintiff's claim, however, is that this purported false assertion was *not* included in the Affidavit of Probable Cause. The particular statement at issue provides: "Poper stated that on 02/14/2010, she went to sleep after taking NyQuil for a cold and woke up naked sometime during the middle of the night because she felt Meketa's penis between her legs." (Doc. 27-16, p. 1). Thus, the Plaintiff is plainly incorrect in his argument that Officer Kamoie falsely stated that Nyquil was the "only" medication that the Plaintiff had taken, and indeed, the Plaintiff conceded as much during his deposition. (Doc. 27-3, p. 75). Because no record evidence controverts Officer Kamoie's statement that Poper had taken Nyquil on the night of the attack, we cannot conclude that Officer Kamoie made a "false assertion" with regard to Poper's medications and attendant mental state.[4]

### 2. Omissions

We turn then to considering the Plaintiff's position with regard to several pieces of information that, according to the Plaintiff, were supported by objective

---

[4] We recognize that the Plaintiff's argument with regard to this alleged assertion is intimately related to his argument that the Plaintiff's list of prescribed medications should have been included in the Affidavit. We note that our holding with regard to this particular purported assertion does not preclude a discussion of the prescription issue; however, given the nature of that argument, we address it *infra* as an omission rather than here as a false assertion.

evidence but were nonetheless omitted from the Affidavit by Officer Kamoie. The Plaintiff posits that had any or all of this information been included in Officer Kamoie's Affidavit, the magisterial district judge could not have found probable cause to issue an arrest warrant. We consider each alleged omission in turn.

### a. Omission #1: Prior Rape Report

The Plaintiff first asserts that Officer Kamoie recklessly disregarded the truth by failing to include in his Affidavit the following: "It should be noted that Poper made a prior report of rape against [the Plaintiff] to the Pennsylvania State Police, which she withdrew fearing she would be charged." (Doc. 32, p. 10). The Plaintiff asserts that this information goes to credibility and the likelihood that the victim was making a false rape report to Officer Kamoie. It is undisputed that this information was known to Officer Kamoie at the time that he drafted the Affidavit. When asked why he did not include this information in the report, Officer Kamoie admitted that Poper had included the prior report in her formal statement and said that she withdrew the prior report because the investigating officer did not believe her account and she was afraid of being charged with false reports. He further testified that he believed that this information had no relevance to a February 2010 rape occurrence and that, if anything, a prior rape claim against the Plaintiff was more inculpatory than exculpatory.

In our view, the mere existence of a prior rape report that was ultimately withdrawn does not discredit the victim's testimony such that it is relevant for inclusion in an Affidavit of Probable Cause. At the time that Officer Kamoie constructed his Affidavit, he possessed no objective facts which indicated that Janet Poper and her account of the events of February 15, 2010 were not credible. Indeed, the Plaintiff does not in any way dispute Officer Kamoie's testimony that he perceived Poper to be credible and had no information to believe that she was not. (Doc. 27, ¶ 66). Further, as the Defendant observes, the occurrence or not of a prior rape is largely irrelevant as far as objective considerations go for purposes of determining probable cause in this particular instance, which requires only enough facts to establish a reasonable probability that this particular suspect committed *this* particular crime. Accordingly, we cannot conclude that this was the kind of thing that a judge would wish to know in making a probable cause determination or that Officer Kamoie exhibited a reckless disregard for the truth by failing to include the information in his Affidavit.

### b.    Omission #2: Recent Breakup and Disputes

The Plaintiff contends next that Officer Kamoie should have included in the Affidavit the known fact that Poper and the Plaintiff had recently broken off their

romantic relationship, that Poper and the Plaintiff frequently got into "retarded arguments," and that during one such argument, police responded to the residence, although no charges were filed. (Doc. 26, p. 14). Specifically, Plaintiff suggests that the following should have been included in the Affidavit:

> It is also noteworthy that Poper and [the Plaintiff] continue to live together after breaking off their relationship, and that the police had been dispatched to their residence because of a dispute over property, although no one was charged for this incident. Based on Poper's statements to your affiant, it appears Poper and [the Plaintiff] are estranged and Poper has reason to be angry at [the Plaintiff].

(Doc. 32, p. 10). Officer Kamoie posits that this information is unrelated to the information reported to him regarding the February 14, 2010 assaults and was therefore not included in his Affidavit. While the final sentence proposed by the Plaintiff is more speculation than objective observation, the remainder of this proposed inclusion is supported by the record and was information available and known to Officer Kamoie at the time that he drafted his Affidavit.

In this Court's view, information related to the state of the relationship between a victim and an alleged assailant is information that any judge would want to know in making a probable cause finding for two separate but equally important reasons. First, as the Plaintiff observes, the information could cast sufficient doubt on the victim's credibility and her motives for reporting the alleged crime. On the

other hand, depending on a particular judge's view of the information, continued and vigorous disputes between the parties could potentially be construed as inculpatory, establishing that the suspect might have had a reason to harm the victim. To that end, we cannot but conclude that the occurrence of numerous, impassioned disputes between the parties is information that a reasonable judge would wish to know in making a probable cause determination. We thus conclude that Officer Kamoie acted with reckless disregard for the truth by failing to include this information in his Affidavit of Probable Cause.

### c. Omission #3: Window Blind Evidence

Plaintiff next argues that Officer Kamoie recklessly omitted from his Affidavit that when he visited the residence that Poper and the Plaintiff shared on March 1, 2010 and photographed the window blind and closet, those photographs revealed no corroborating damage. (Doc. 32, p. 12). Specifically, the Plaintiff contends that the Affidavit, in addition to documenting Poper's allegation that she tried to hide behind a stand-up closet and damaged window blinds while trying to escape, should have included the following: "Your affiant took photographs of the room where the alleged assault took place but was unable to find significant corroborating damage." (*Id.*). In response, Officer Kamoie asserts that the photos actually do corroborate Poper's account of the assault, revealing damaged window

blinds and that Officer Kamoie had know way of knowing, as the Plaintiff alleges, that the damage might have predated the alleged assault. From a review of the record, we must agree with the Defendant.

Critically, the Plaintiff points to no evidence whatsoever to support this purported information as styled in his reconstructed affidavit. Nothing of record establishes that the apartment was void of physical corroborating evidence at the time Officer Kamoie visited, and indeed, Plaintiff in his testimony conceded that the window blind was damaged; the Plaintiff disputes, however, that the damage was the result of Poper's escape attempt and instead asserts that the damage pre-dated the couple's move into the apartment. Thus, quite the contrary of Plaintiff's assertion, based upon Officer Kamoie's objective observations and the information within his ken at the time he drafted his Affidavit, the photograph did corroborate the victim's statement and thus this purported omission is not supported by the record.[5] We thus reject the Plaintiff's argument on this point, and decline to include a factually unsupported statement in the reconstructed affidavit.

### d.    Omission #4: Joshua Poper's Statement

The Plaintiff asserts that the Affidavit should have stated that "Joshua

---

[5] We note that had Officer Kamoie included the information in the form actually supported by the record—that is, that in his view, the photograph taken at the apartment corroborated the victim's statement—that information would have been more inculpatory than exculpatory.

Poper's statement did not fully corroborate Jane Poper's statement in that he did not see what allegedly occurred." (Doc. 32, p. 10). Although the Plaintiff does not elaborate on this position in his papers with the exception of stating broadly that "Poper's questionable statements could not be fully corroborated through Joshua Poper's statement . . . ," it appears to be the Plaintiff's position that there were sufficient inconsistencies between Joshua Poper's statement and Janet Poper's statement to warrant informing the magisterial district judge. Officer Kamoie responds by pointing out that Plaintiff has now testified that the only difference between Joshua Poper's account and Janet Poper's account was that Joshua Poper had omitted the date of the alleged rape in his statement. (Doc. 27-3, p. 69).

There is again a dearth of record evidence supporting Plaintiff's argument that this proposed inclusion is true or was known to the Defendant at the time he drafted his Affidavit, and the Plaintiff has failed to point the Court to any evidence supporting this claim. All the same, we have independently reviewed Joshua Poper's statement and compared the same with the statement of Janet Poper, and while Joshua Poper's statement does not relay a date, it does provide that he overheard a dispute and "scuffle noises" on the night in question and that Janet Poper called out to him for help in a "choking voice." (Doc. 27-15). Given this comparison, we cannot find that there are any inconsistencies between the two

statements which would support the Plaintiff's broad contention that Joshua Poper did not corroborate the victim's account. Because we again find that the Plaintiff's proposed inclusion is entirely unsupported by the factual record before the Court, we cannot conclude that Officer Kamoie recklessly disregarded the truth in not including this information in his Affidavit.

### e.    Omission #5: Plaintiff's Interview

The Plaintiff next asserts that it was constitutional error for Officer Kamoie to fail to inform the magisterial district judge that he had not yet interviewed the Plaintiff at the time that he submitted the Affidavit. Specifically, the Plaintiff asserts that the following should have been included in the Affidavit:    ". . . your affiant has not yet interviewed Meketa to determine his whereabouts at the time of the alleged incidents." (Doc. 32, p. 10). The Defendant responds that he was under no obligation to interview the Plaintiff prior to filing an Affidavit of Probable Cause, that to do so would have been against the Plaintiff's interests and the protections of the Fifth Amendment, and that the magisterial district judge, given the lack of information pertaining to a suspect interview, was obligated to assume that none occurred, thus mooting the need to include this statement.

The parties do not dispute that at the time the Affidavit was filed, Officer Kamoie had not interviewed the Plaintiff and that he did not advise the magisterial

district judge of this fact in his Affidavit. However, in the context of false arrest claims, at least one court within this Circuit has previously held that "nowhere does the determination of probable cause require that the alleged perpetrator be interviewed by police." *Anderson v. Goga*, 2011 U.S. Dist. LEXIS 115041, *17 (W.D. Pa. Oct. 5, 2011).[6] We tend to agree with the *Anderson* holding. The Plaintiff has identified no case law imposing this requirement on law enforcement, and we are disinclined to confuse our well-established probable cause principles by creating such a rule. Further, as probable cause analyses "must be based upon only that information which is found within the four corners of the affidavit," *People of the Virgin Islands v. John*, 654 F.3d 412, 420 (3d Cir. 2011), and because the Affidavit here included no information regarding the occurrence of a suspect interview, the magisterial district judge likely (and fairly) presumed that none had occurred. For these reasons, we conclude that Officer Kamoie's failure to interview the Defendant prior to drafting his Affidavit, and his attendant failure to include that particular fact therein, does not amount to a reckless disregard for the truth.

### f.    Omission #6: Medications

As noted *supra*, the Plaintiff cases this issue as a false assertion. However, it

---

[6] While the *Anderson* court ultimately denied the defendants' motion to dismiss, its decision was based not on the failure to interview the plaintiff during the criminal investigation but instead on the defendants' failure to divulge known exculpatory information. *Anderson*, 2011 U.S. Dist. LEXIS 115041, *17-19.

is clear from the parties' arguments that the Plaintiff's real concern is that Officer Kamoie omitted from the Affidavit certain information regarding medications that Poper had, according to him, taken on the night of the alleged attack. Specifically, Plaintiff asserts that the Affidavit should have included that "Poper stated that on 02/14/2010, she went to sleep after taking Nyquil for a cold, and at that time was also taking Effexor, Gabepentin, Digoxin, Clonazepam, Furoseminde, Morphine Sulfate, and Imetrix . . ." and that "After reviewing the rape kit, I noticed that Poper reported taking multiple drugs including Effexor, Gabepentin, Digoxin, Clonazepam, Furosemide, Morphine Sulfate, Oxycodone HCL, and Immetrix, for physical and mental problems Poper suffered." (Doc. 32, p. 11). Plaintiff posits that Officer Kamoie intentionally omitted information which indicated that "Poper was highly medicated, placing her state of mind and her ability to accurately recall into question." (*Id.* at p. 13). Plaintiff argues that inclusion of this information would necessarily have precluded a finding of probable cause.

First and most critically, Plaintiff has pointed to no record evidence, and we have independently discovered none, which supports that at the time he filed his Affidavit, Officer Kamoie knew or had reason to believe that Poper had taken each medication to which she was prescribed on the date of the attack or had any reason to believe that those medications had altered the victim's mental state. At the time

27

that the Affidavit was submitted, Officer Kamoie had only been informed by the Plaintiff that she had taken Nyquil and had been informed by the hospital report that she was prescribed to several, but not all, of the medications listed by the Plaintiff in his complaint. Plaintiff does not dispute Officer Kamoie's statement that, at the time he drafted the Affidavit, he did not know whether Poper had taken any medication other than Nyquil on the night of the alleged attack or at the time she gave her reports. (Doc. 27, ¶ 69). There is thus no record support for Plaintiff's proposition that Poper was under the influence of mind-altering drugs at the time of the alleged attacks or when she gave her statement to Officer Kamoie.

Further, the Plaintiff has pointed to no record evidence which supports the presumptively exculpatory inference that Plaintiff would have the magisterial district judge and this Court draw from that proposed inclusion: that Janet Poper was mentally unstable and had an altered state of mind at the time of the attack and at the time that she gave the report. Again, the Plaintiff does not dispute Officer Kamoie's statement that he perceived Janet Poper to be credible and had no reason to disbelieve the account that she twice provided to him. Further, the report from the Chambersburg Hospital does not state that Janet Poper had taken the medication on the night in question or that she experienced any effects as a result–it simply enumerated her identified prescriptions. Because the Plaintiff has

not pointed to record evidence establishing that Janet Poper had taken these medications on the dates at issue and that the medications had some impact on her ability to perceive or recall, we cannot conclude that Officer Kamoie's failure to include Janet Poper's prescription information was in any way a reckless disregard for the truth.

### g.      Omission #7: Partial Rape Kit

Next, the Plaintiff asserts that it was error for Officer Kamoie not to supplement his statement that he "sent Poper to the Chambersburg Hospital to have the photograph and documentation portion of a rape kit performed" by stating expressly that "the rape kit occurred beyond the time in which physical evidence, other than photographs of bruising on Poper's body, could be gathered." (Doc. 32, p. 11). With the exception of the reconstructed Affidavit in his brief adding this language, the Plaintiff makes no argument in his papers supporting the inclusion of this language which, in our view, constitutes a waiver of this claim. *See, e.g., Freeman v. Middle Twp. Bd. of Educ.*, 2012 U.S. Dist. LEXIS 121195, *11 & n. 5 (D.N.J. Aug. 27, 2012) (failure to address movant's dismissal argument may constitute waiver of that particular claim). Nonetheless, in deference to the Plaintiff, we briefly consider whether Officer Kamoie omitted this information with a reckless disregard to the truth.

Notwithstanding the Plaintiff's assertion to the contrary in his papers, the Affidavit of Probable Cause *does* convey to the magisterial district judge what portion of the rape kit was completed. As the Defendant observes, the Affidavit of Probable Cause expressly states that the "photograph and documentation portion of a rape kit" was performed on February 21, 2010, and thus, by operation of the four corners rule discussed above, permits only that finding by the magisterial district judge. The Affidavit does not describe any physical evidence, and thus the reviewing judge could not speculate that any might have existed. Accordingly, the Plaintiff's assertion that Officer Kamoie failed to include in his Affidavit that only certain portions of the rape kit could be completed due to timing is belied by the record and the Affidavit itself. We thus cannot find that Officer Kamoie acted with reckless disregard for the truth by failing to include this information in his Affidavit of Probable Cause.

### h.    Omission #8: Shampoo Bottle

Plaintiff next asserts that Officer Kamoie exhibited reckless disregard for the truth by failing to include in his Affidavit that "Poper stated to the nurse that she struck [the Plaintiff] with a shampoo bottle, causing a scratch to his right hand and face, but your affiant has not yet examined [the Plaintiff] to determine if he actually had these injuries. Moreover, Poper's statement to your affiant did not

include reference to Poper striking [the Plaintiff] with a shampoo bottle." (Doc. 32, p. 11). The Plaintiff does not elaborate beyond this proposed reconstruction in his brief, and indeed did not inquire as to this issue during Officer Kamoie's deposition, again causing the Court to question whether the Plaintiff has entirely abandoned this issue. In light of his other arguments, however, the Court can infer that Plaintiff believes that there are "discrepancies" between the report provided by Janet Poper to the nurse and the report provided to Officer Kamoie, indicating a lack of credibility which should have been addressed in the Affidavit. (*See* doc. 32, p. 13). We disagree.

Given the record before us, and the lack of any compelling argument from the Plaintiff, we cannot conclude that this is information that a reasonable judge would have been aided by. First, Officer Kamoie asserts, and the Plaintiff again fails to dispute, that Janet Poper, in her oral and written statements to him, did not reference hitting the Plaintiff with a shampoo bottle or any resulting injury to him from the attack. (*Id.*, ¶ 117). Thus, Officer Kamoie had no evidence to support including this statement other than a hearsay statement in the hospital's summary report. Further, Officer Kamoie states, again undisputed by the Plaintiff, that he reasonably believed that the information was irrelevant given that any potential evidence of a scratch would likely have healed given the two week time lapse

between the alleged injury and the date of his Affidavit. (*Id.* ¶ 78, 117). Finally, it would be a broad reach to imply to the magisterial district judge that Poper is not credible simply because she was more detailed in the hospital report than she was in her report to Officer Kamoie. Given these facts, undisputed by the Plaintiff, we cannot conclude that it was a reckless disregard for Officer Kamoie to omit this information from his Affidavit.

### i.   Omission #9: Poper's Allegedly Inconsistent Statements

Lastly, the Plaintiff asserts that it was error for Officer Kamoie not to note in his Affidavit that "Poper told the nurse at the Chambersburg Hospital that [the Plaintiff] had not penetrated her anus with his penis, but [Poper] had told your affiant that [the Plaintiff] had done so." (Doc. 32, p. 11). The Plaintiff asserts that this "discrepancy" between Janet Poper's account to the hospital nurse and the report that she gave to Officer Kamoie indicates that she was of "questionable veracity," thus rendering this information that a magisterial district judge would definitely want to know in conducting a probable cause analysis.

Again, the Plaintiff offers little more than conclusory assertions in support of this point and we are left to navigate the factual record on our own. The record reveals that in her statement to Officer Kamoie, Janet Poper reported an attempted rape which occurred at approximately 2:00 a.m. on February 15, 2010 and during

which she alleges that the Plaintiff forced the "tip of his penis" into her anus but noted that she was able to force him off of her. She also reported a second rape which occurred at approximately 4:15 p.m. on that same day and during which she alleged that the Plaintiff had vaginal, but not anal, intercourse with her. (Doc. 27-14, pp. 5-6). Contrary to Plaintiff's unsupported assertion, nothing in the hospital report states or implies that Janet Poper denied the occurrence of anal penetration during the 2:00 a.m. attack on February 15. Instead, the report details only the afternoon vaginal rape, for which a rape kit was completed, and does not indicate that questions were asked or accounts rendered of the attempted anal rape the prior evening. (Doc. 27-13, pp. 3-4).

Thus, in our view, the summary judgment record simply does not support the Plaintiff's assertion that Janet Poper "told the nurse . . . that [the Plaintiff] had not penetrated her anus with his penis" as the Plaintiff broadly suggests. Absent objective record evidence in support of this assertion, which Plaintiff has again failed to direct the Court to, we cannot conclude that this purported discrepancy was objective information within Officer Kanoie's ken which a reasonable judge would have wanted to know. Accordingly, we again cannot conclude that Officer Kamoie recklessly disregarded the truth by failing to include this manufactured discrepancy in his Affidavit.

### 3. Materiality

Having found that the Defendant recklessly disregarded the truth with regard to some, but not all, of the information above discussed, we must proceed to the second step of our inquiry, which tasks us to consider whether the inclusion or omission of the information recklessly disregarded would have ultimately altered the reviewing judge's finding of probable cause. The Third Circuit has explained this second phase of our analysis as follows:

> In the context of a false arrest claim, after establishing that there is sufficient evidence of omissions and assertions made knowingly, or with reckless disregard for the truth, a court assesses whether the statements and omissions made with reckless disregard of the truth were material, or necessary, to the finding of probable cause. To determine the materiality of the misstatements and omissions, a court must excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether the "corrected" affidavit would establish probable cause. This two-part exercise -- determining the affiant's motivation and constructing a revised affidavit without material omissions or misstatements -- ensures that a police officer does not make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence. An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.

*Reedy v. Evanson*, 615 F.3d 197, 213-14 (3d Cir. 2010).

Following this directive, we must reassemble the Affidavit as originally filed to include the information we have deemed to be recklessly disregarded by Officer Kamoie and determine whether the new Affidavit nonetheless supports a finding of probable cause. The reconstructed Affidavit thus includes the following facts: that on February 21, 2010, Janet Poper, a witness deemed to be credible by the affiant, reported an attempted anal rape which occurred at around 2:00 a.m. on February 15, 2010, and a vaginal rape which occurred at 4:50 p.m. on the same date; that Poper identified her ex-boyfriend, the Plaintiff in the case *sub judice*, as the assailant; that the Plaintiff and Poper had continued to live together despite their recent breakup and gotten in frequent disputes, one which resulted in a police response to the residence; that Officer Kamoie sent Poper to the hospital for the documentation and photograph portion of a rape kit to be performed; that Poper returned to the police station on February 24, 2010 at Officer Kamoie's request; and that Poper provided Officer Kamoie with a twelve-page witness statement documenting and detailing the two attacks.

In determining whether this reconstructed affidavit supports the issuance of an arrest warrant, we are guided by several well-established principles governing probable cause analyses. It has long been held that probable cause exists where the facts and circumstances are such that a "prudent" or "reasonable" person may

fairly believe that a crime had been committed and that the suspect had committed it. *Sherwood*, 113 F.3d at 399. The concept of probable cause has been defined variously, but the general consensus and indeed clearest definitions consider it to require at least a "fair probability" or "substantial chance" that a crime has been committed. *Robinson v. Clemons*, 987 F. Supp. 280, 285-86 (D. Del. Jan. 9, 1998) (quoting *United States v. Sokolow*, 590 U.S. 1, 7 (1989); *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). As noted previously, in making the probable cause determination, courts may consider only that information contained within the four corners of the affidavit; in other words, the court must "confine itself to the facts" therein. *People of the Virgin Islands*, 654 F.3d at 420. Guided by these principles and limiting ourselves to only the facts contained in our reconstructed affidavit, we nonetheless conclude that the same contains sufficient information to support a finding of probable cause.

Importantly, the Plaintiff appears to concede that the Affidavit as originally drafted establishes probable cause, and he does not take issue with the reviewing judge's ultimate finding that probable cause existed. Our task instead is to query whether the omitted fact that the Plaintiff and Poper had a strained relationship at the time the rape report was made vitiates the probable cause that the Affidavit otherwise created. We simply cannot conclude that it does. The Affidavit relays a

detailed victim statement, a hospital report, and the affiant's view that the victim was a credible witness. In our view, the fact that the Plaintiff and Pope had a difficult relationship prior to Pope's report to Officer Kamoie is insufficient to undermine the probable cause finding otherwise overwhelmingly supported by the Affidavit. Indeed, as we have indicated above, while including this information might indicate that Poper had a motive to harm or seek revenge for the Plaintiff, a magisterial district judge could just as readily consider this information as evidence that the Plaintiff had motive to harm Poper. For this reason, we cannot conclude that the addition of this information would have precluded the magisterial district judge's otherwise amply supported finding of probable cause.

Thus, although we find that Officer Kamoie did recklessly disregard certain information in drafting his Affidavit of Probable Cause, its relevance was not so material or so vital as to vitiate the reviewing judge's finding of probable cause. Ultimately then, because absence of probable cause is a requisite and dispositive element of the Plaintiff's false arrest and false imprisonment claims, *see Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268-69 (3d Cir. 2000), we cannot find that Officer Kamoie violated the Plaintiff's constitutional right to be free from false arrest or imprisonment. For this reason, we conclude that the Defendant is entitled to qualified immunity as to each of these claims and will grant his motion for

summary judgment to that extent.

**B.** **Malicious Prosecution**

We turn next to the Plaintiff's claim against the Defendant for malicious prosecution. While the elements germane to a malicious prosecution claim differ from those supporting the claims just discussed, one crucial element remains the same: it is axiomatic that, in order to prevail on this claim, the Plaintiff must establish an absence of probable cause. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)) (essential element of malicious prosecution claim is that "the defendant initiated the proceeding without probable cause"). Thus, to sustain his claim for malicious prosecution, the Plaintiff must establish that Officer Kamoie, at the time he drafted his Affidavit, lacked probable cause to arrest the Plaintiff and institute criminal proceedings against him. *Johnson*, 477 F.3d at 81-82. We have above concluded that there exists no genuine dispute as to whether probable cause to arrest existed, holding that the Plaintiff has failed to establish his Fourth Amendment claims. For this reason, we likewise find that Officer Kamoie is entitled to qualified immunity as to his malicious prosecution claim as well.

**3.** **Procedural Due Process**

Finally, our analysis turns to the Plaintiff's procedural due process claim,

which is trickier to evaluate, candidly, because the Plaintiff fails to articulate a foundation for this claim in any meaningful way. Indeed, his reasoning appears circular. In his amended complaint, the Plaintiff states only that: "In the event [Officer Kamoie's] affirmative misrepresentations and omissions in his Affidavit of Probable Cause are not found to be material, [Officer Kamoie's] failure to inform the magisterial district judge of exculpatory information, as set forth above, violated [the Plaintiff's] Procedural Due Process Rights." (Doc. 1, ¶ 56). In his opposition papers, the Plaintiff argues only briefly that this claim "is based on [Officer] Kamoie's failure to provide the magistrate with exculpatory information, the materially false assertion and omissions," with reliance on *Carey v. Piphus*, 435 U.S. 247, 266 (1978). In addition to distinguishing *Carey*, which provides no arrest or prosecution discussion and instead relates to procedural due process and public school suspensions, the Defendant responds that because the same analysis which controlled the Fourth Amendment claims also controls any procedural due process claim, the Plaintiff's claim must fail. After a review of the relevant decisional law, we are in agreement with the Defendant.

This Court has previously held that it is the Fourth Amendment, not the Fourteenth Amendment, which is the proper vehicle for addressing any unlawful pretrial deprivations of liberty incidental to criminal proceedings. *Crouse v. S.*

*Lebanon Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Pa. Oct. 22, 2009) ("A pretrial

deprivation of liberty that is related to a criminal proceeding is addressed not

through procedural due process, but the Fourth Amendment."). This doctrine, also

known as the explicit source rule, is derived from the Supreme Court's decision in

*Albright v. Oliver*, 510 U.S. 266 (1994), where the high Court held that when a

"particular amendment 'provides an explicit textual source of constitutional

protection' against a particular sort of government behavior, 'that Amendment, not

the more generalized notion of substantive due process, must be the guide for

analyzing these claims.'" *Id.* at 273. This rule has been extended to preclude both

procedural and substantive due process claims where the rights underlying the

same are derived from and otherwise protected by the Fourth Amendment. *See*

*Robinson v. Clemons*, 987 F. Supp. 280, 284-85 (D. Del. Jan. 9, 1998) (substantive

due process claim premised on "no probable cause" argument is governed by

Fourth, not Fourteenth, Amendment); *Posey v. Swissvale Borough*, 2013 U.S. Dist.

LEXIS 34415, *46 (W.D. Pa. Mar. 13, 2013) (plaintiff's claims of false arrest and

malicious prosecution "are more properly analyzed under the Fourth Amendment

rather than procedural due process"). Thus, where the core of a plaintiff's claim

arises from allegations of unlawful arrest, imprisonment, or prosecution, courts are

directed to analyze those claims through the prism of the Fourth and not the

Fourteenth Amendment.

For this reason, we are compelled to dismiss the Plaintiff's procedural due process claim. We have already determined that the existence of probable cause defeats the Plaintiff's Fourth Amendment false arrest, false imprisonment, and malicious prosecution claims, thus finding that the Defendant did not violate the Plaintiff's constitutional rights and is entitled to qualified immunity. Because the Plaintiff has articulated no basis for a procedural due process claim separate and apart from those actions underlying his Fourth Amendment claims, by operation of the explicit source rule and its accepted applications in this Circuit, we will grant summary judgment in favor of the Defendant as to this final count.

## V.     CONCLUSION

As the Supreme Court has long observed, while the facts proved at trial may not ultimately have been sufficient to establish guilt beyond a reasonable doubt in the eyes of one's peers, they may nonetheless be sufficient to establish probable cause to arrest, detain, or prosecute—the reality that the facts proved at trial were insufficient to establish guilt does not automatically translate to a meritorious Fourth Amendment claim. *See Henry v. United States*, 361 U.S. 98, 102 (1959); *see also Crouse*, 668 F. Supp. 2d at 672 ("'The constitutional validity of the arrest

does not depend on whether the suspect actually committed any crime,' but whether the police had probable cause to believe that the individual committed those crimes at the time of his or her arrest."). In essence, Plaintiff argues that law enforcement is or should be tasked to conduct an exhaustive, no-stone-unturned investigation attacking the character and credibility of the reporting victim and oppugning every fact presented to them. This argument is refuted, however, by the vital distinction between establishing probable cause, the duty of police officers, and creating reasonable doubt, a task for defense counsel. We thus flatly reject the Plaintiff's attempt to impose this heightened burden on law enforcement.

That in conducting a *post hoc* analysis we might conclude that we would have crafted the Affidavit somewhat differently is not of great salience. We have today found that, on the record before the Court, there can be no genuine dispute as to whether the Defendant had probable cause to arrest the Plaintiff and initiate a prosecution. For that reason, no reasonable jury could conclude that the Defendant violated the Plaintiff's constitutional rights and the Defendant is thus entitled to the full protections of the doctrine of qualified immunity. We will thus grant the pending motion for summary judgment and enter judgment in favor of Defendant Eric Kamoie. An appropriate order shall issue.